CECELIA C. STEPHENS

V.

LAWRENCE B. STEPHENS

Record No. 820683

LAWRENCE B. STEPHENS

V.

CECELIA C. STEPHENS

Record No. 820740

Decided June 14, 1985, at Richmond

Present: All the Justices

*Morris H. Fine (Fine, Fine, Legum & Fine*, on brief), for appellant. (Record No. 820683)

*Thomas H. Cave (Mahler & Cave, P.C.*, on brief), for appellee. (Record No. 820683)

*Thomas H. Cave (Mahler & Cave, P.C.*, on brief), for appellant. (Record No. 820740)

*Morris H. Fine (Fine, Fine, Legum & Fine*, on brief), for appellee. (Record No. 820740)

THOMAS, J., delivered the opinion of the Court.

These appeals concern a question of personal jurisdiction in Virginia over an individual who resides in Tennessee. Resolution of the jurisdictional issue requires us to construe the Revised Uniform Reciprocal Enforcement of Support Act (RURESA or the Act), Code §§ 20-88.12 through 20-88.31.

The same facts are pertinent to both appeals. Lawrence B. Stephens and Cecelia C. Stephens were divorced in Florida. Two children were born of the marriage. The final decree was entered on June 4, 1965. It provided for $125 per child per month in child support and $100 per month in spousal support. Shortly after the divorce, the parties moved to Virginia, Lawrence as part of his military duties and Cecelia returning to her home state.

In late 1966, Cecelia sued Lawrence in the Juvenile and Domestic Relations Court of the City of Virginia Beach to enforce arrearages in child and spousal support pursuant to the Florida decree. In early 1967, Lawrence was personally served. By order dated January 26, 1967, the J & D R court ordered Lawrence, in a unitary award, to pay $350.25 per month, through the court. In February 1968, the unitary award was increased to $375.25 per

month. Thereafter, in September and December 1968, Lawrence filed petitions in the same court to cut off support.[1] Lawrence moved from Virginia to Tennessee in December 1968.

From Cecelia's first suit, in December 1966, through the 1970's, Cecelia instituted several proceedings against Lawrence, in Virginia, concerning matters of support. The parties' youngest child reach his majority on April 10, 1972, but litigation concerning both child support arrearages and spousal support continued unabated. Finally, on June 27, 1980, the J & D R court entered an order in which it held that the court lacked personal jurisdiction over Lawrence regarding spousal support.

In that order, the court wrote as follows: "The Order of this Court of January 26, 1967, and all Orders subsequent thereto as they relate to child support are valid. Anything relating to alimony is void for want of jurisdiction." The June 1980 order confirmed a ruling the J & D R court had first announced in a letter opinion dated September 6, 1979. The June 1980 ruling was never appealed by Cecelia. Its effect was to annul all previous awards of spousal support.

In February 1980, after the September 1979 letter opinion but before the June 1980 order, Cecelia registered the Florida divorce decree in Virginia, pursuant to the provisions of Code § 20-88.30:5. The events that followed the registration are most important to these appeals.

In August 1980, Cecelia again sued Lawrence in the Virginia Beach court for spousal support arrearages, this time in the amount of $4,800. Notice of the suit was sent to Lawrence in Tennessee. By order dated September 8, 1980, the J & D R court ruled that Lawrence "was properly served with notice of hearing" and ordered him to pay the $4,800 in spousal support arrearages together with interest at 8% and attorney's fees of $300.

Lawrence made a special appearance by counsel and petitioned the J & D R court to rehear the matter on the ground that Law-

---

[1] Although in 1968 Lawrence submitted himself to the jurisdiction of the J & D R court, at that time that court did not have jurisdiction over spousal support matters where the husband and wife were divorced. *See* Acts 1966, c. 360; Acts 1960, c. 388. As a result, when Lawrence submitted himself to the jurisdiction of the J & D R court he could only submit himself to the extent that the court had subject matter jurisdiction over the claim. In essence, as the J & D R court later ruled, in 1968 all Lawrence did was to submit himself to the J & D R court for purposes of child support matters. A great deal of the complexity of this case arose from the initial misunderstanding of the effect of Lawrence's submission to the J & D R court's jurisdiction.

rence "was never served personally." Lawrence also entered a plea to the jurisdiction of the court. By order dated November 21, 1980, the court ruled that Lawrence had been properly served in Tennessee by the delivery of Cecelia's petition to his office even though he was absent at the time. The court noted that Lawrence admitted receiving a copy of the petition. The court affirmed its September 8, 1980 award and then ruled that Lawrence was also liable for an additional $7,580 in arrearages based on the June 4, 1965 Florida decree. According to the J & D R court, the $7,580 figure was comprised of "unpaid alimony and child support for periods prior to August 1976 and unpaid spousal support for September and October, 1980." Lawrence did not appeal either the September 1980 order or the November 1980 order.

In June 1981, Cecelia filed another petition in the J & D R court. This time she sought to increase spousal support. Lawrence moved to dismiss the petition on the ground that the court lacked personal jurisdiction over him. Lawrence's motion was granted. In an order dated June 24, 1981, the court ruled that there had "not been proof of proper service of said petition upon" Lawrence. Consequently, the court dismissed the petition.

In August 1981, Cecelia filed yet another petition to increase spousal support. Again, Lawrence moved to dismiss on grounds of lack of personal jurisdiction. Again the court granted Lawrence's motion. In its order, the J & D R court stated the following:

> Mere registration under URESA, of a foreign decree in Virginia, combined with personal service on the defendant in another State is insufficient to create personal jurisdiction over the defendant.
>
> It is further held that this Court does not have *in personam* jurisdiction over Mr. Stephens, notwithstanding the fact that the Florida divorce decree has been properly registered here.

On appeal, the circuit court reached the same result. In an order dated January 20, 1982, the circuit court stated that the mere registration of a foreign decree in Virginia, coupled with personal service on a defendant in another state, is not sufficient to create personal jurisdiction over that defendant in a Virginia court.

Cecelia appeals from the circuit court's January 1982 order. She contends that once she registered the Florida decree in Vir-

ginia, all she then had to do was to notify Lawrence of any suit brought by her in Virginia and the Virginia court would have personal jurisdiction over him. Cecelia bases her argument upon her reading of Code § 20-88.30:6 and of *Sheffield v. Sheffield*, 207 Va. 288, 148 S.E.2d 771 (1966). According to Cecelia, the court erred in preventing her from proceeding against Lawrence. We think the J & D R court lacked personal jurisdiction over Lawrence; therefore, we will affirm the judgment of the trial court in Cecelia's appeal.

The ruling that the J & D R court did not have personal jurisdiction over Lawrence was a complete reversal of the position that court had taken a year earlier when it entered judgments against Lawrence totaling approximately $13,000. Following the entry of the J & D R court's favorable September 8, 1981 order, Lawrence petitioned for a rehearing concerning the orders of September 8, 1980, and November 21, 1980, in which awards adverse to him had been made. Lawrence contended that those earlier orders were void for lack of personal jurisdiction. Cecelia moved to quash the petition for rehearing on the ground that the 1980 orders had not been appealed and were therefore final.

The J & D R court ruled in favor of Cecelia, accepting her arguments. Lawrence appealed the ruling to the circuit court. That court denied his appeal "on the grounds that the previous petition to rehear [filed by Lawrence following the entry of the September 8, 1980 order] was not appealed from and therefore, [it had] no jurisdiction."

Lawrence appeals from the circuit court's ruling denying his petition to set aside the 1980 orders. According to Lawrence, the 1980 orders are void for lack of personal jurisdiction and as such are subject to attack either directly or collaterally. Lawrence contends that even though he did not appeal, he is nevertheless entitled to have the 1980 judgments declared void. However, because of a procedural deficiency discussed *infra*, we must affirm the trial court's ruling in Lawrence's appeal.

Since, as we stated at the outset, the question of personal jurisdiction in Virginia, over Lawrence, is critical to both appeals, we will address that issue first. Cecelia contends that when the Stephens were divorced in Florida, in 1965, Florida had personal jurisdiction over both parties. She contends further that when she registered the Florida decree in Virginia in 1980, it became for all intents and purposes a decree of a Virginia court. She argues, in

effect, that when she registered the Florida judgment in Virginia the act of registration transferred to Virginia the personal jurisdiction of the Florida courts.[2] She then relies on *Sheffield* and says, based on that case, that notice to Lawrence vests the trial court with personal jurisdiction over him.

Cecelia's argument has some surface appeal but it cannot withstand scrutiny. First, she focuses entirely upon one provision in a much larger statutory scheme. The portion of the statute relied upon by Cecelia reads as follows:

> Upon registration, the registered foreign support order shall be treated in the same manner as a support order issued by a court of this State. It has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this State and may be enforced and satisfied in like manner.

---

[2] On brief, Cecelia made two arguments concerning the manner in which the Virginia Courts acquired jurisdiction over Lawrence. She argued on the one hand, that the personal jurisdiction of the Florida courts was transferred to Virginia upon registration of the Florida decree. She also argued in the alternative, that the jurisdiction acquired by the Juvenile and Domestic Relations Court over Lawrence in 1967 continued to the time of the suit she filed after she registered the Florida decree. Cecelia's counsel abandoned the second argument in the following exchange with the Court during oral argument:

Court: Do you contend that once the Florida Decree was registered in Virginia in 1980 that the way our courts had personal jurisdiction over Mr. Stephens was because he had appeared in Virginia, in 1967, in J & D court?

Cecelia's
Counsel: No sir.

Court: Well how did we get the personal jurisdiction?

Cecelia's
Counsel: We get personal jurisdiction by, one, registering the Florida Decree. Now mind you, Florida had personal jurisdiction over Mr. Stephens and Mrs. Stephens . . .

Court: We understand that.

Cecelia's
Counsel: . . . And when that is registered here in Virginia and then the next step takes place, that Mr. Stephens is served anywhere in the world, then Virginia has jurisdiction under the Reciprocal Non-Support Act.
. . . .

Court: You, in effect, claim that the Florida personal jurisdiction is somehow transferred to Virginia.

Cecelia's
Counsel: That's what the statute says exactly.

Code § 20-88.30:6(a). This language is admittedly broad but it must be read within its statutory context.

RURESA is divided into four articles. The portion of the statute dealing with registration is merely the last of the four articles. A review of the entire Act makes clear that the drafters took steps to ensure that the defendant/obligor would be present and amenable to process in the state in which the support question was litigated. For example, Code § 20-88.15 says that the duties imposed by the Act "bind the obligor *present in this State* regardless of the presence or residence of the obligee." (Emphasis added.) Code § 20-88.22 provides, in essence, that before an initiating state can certify a petition and transfer it to a responding state, it must first conclude "that a court of the responding state *may obtain jurisdiction of the obligor or his property.*" (Emphasis added.) Code § 20-88.23 provides that where Virginia is the responding state under the Act, the Commonwealth's Attorney must "take all action necessary in accordance with the laws of this State *to enable the court to obtain jurisdiction over the obligor or his property.*" (Emphasis added.) The Act is replete with provisions aimed directly at ensuring the defendant's presence in the jurisdiction where the support question is litigated.

■ The registration provision, upon which Cecelia relies, provides remedies in addition to those contained in the rest of the Act. Code § 20-88.30:1. Therefore, it must be read in conjunction with the Act's other provisions. When the Act is read as a whole, it is apparent that it would be anomalous for the bulk of the Act to be concerned with having the defendant present and amenable to process and for the last article to abandon completely the need for presence. In our opinion, an overall consideration of the Act does not support Cecelia's argument that personal jurisdiction can be transferred from one state to another.

This Court had occasion to consider the registration provisions of the Act in *Scott* v. *Sylvester*, 220 Va. 182, 257 S.E.2d 774 (1979), *cert. denied*, 464 U.S. 961 (1983). There, the ex-wife sued her ex-husband in Virginia, under RURESA, to collect alleged arrearages under a Maryland child support order. The ex-wife had previously registered the Maryland order in Virginia. However, the trial court ruled that it could not order the payment of arrearages that accrued while the ex-husband was in Maryland. In its view, it could only enter judgment on arrearages that accrued while the ex-husband was present in Virginia. We reversed

the trial court's decision. In so ruling, we said the following about the registration provisions that are here under review:

> In 1968 the National Conference of Commissioners on Uniform State Laws added to the Uniform Support Act a new section providing an additional remedy for the enforcement of support, which the General Assembly adopted by Acts 1970, c. 669 at 1427. Code §§ 20-88.30:1 through 20-88.30:7. *These code sections set forth the procedures to be followed where the obligee has obtained in a foreign state a court order creating a support obligation and thereafter seeks to enforce it in a state where the obligor can be found and served with process.*

220 Va. at 185, 257 S.E.2d at 776 (emphasis added) (footnotes omitted). Though the issue in *Scott* was not identical to that in the instant appeal, there, we clearly intimated that despite the registration of a foreign decree, the obligor must be found in Virginia and served with process before a Virginia court can proceed against him. Nothing in this appeal suggests any reason for us to retreat from what we said in *Scott*.

Courts in other jurisdictions in cases concerning the Act have reached conclusions either the same as, or in harmony with, the decision reached here. *See Garlitz* v. *Rozar*, 18 Ariz. App. 94, 500 P.2d 354 (1972); *Pinner* v. *Pinner*, 33 N.C. App. 204, 234 S.E.2d 633 (1977). In *Garlitz*, the court rejected the identical argument made here by Cecelia, that is, that personal jurisdiction can be transferred from one state to another:

> We believe that any such interpretation of A.R.S. § 12-1702 would violate basic constitutional requirements of due process. It is fundamental to the concept of due process that a party must have some "minimum contacts" with a state before its courts can exercise *in personam* jurisdiction over him. . . . Here Mr. Garlitz did not have such minimum contacts.

18 Ariz. at 97, 500 P.2d at 357 (citations omitted).

■ Lawrence argues, and we agree, that there are serious due process implications to Cecelia's argument that personal jurisdiction can somehow be transferred from one state to another by the mere act of registering a foreign decree coupled with notice to the

obligor. Cecelia's position could lead to a situation where a couple is divorced in Maine, the ex-husband moves to Florida, the ex-wife moves to Hawaii and registers the Maine decree. Thereupon, by Cecelia's argument, once the ex-husband is notified of a Hawaii proceeding, the Hawaii courts would have personal jurisdiction over him and could enter an *in personam* judgment against him though he had never set foot in Hawaii. We do not believe that RURESA can properly be read to so completely break down the boundaries of the states and to so thoroughly do away with the minimum contacts required by due process before a state can assert personal jurisdiction over a nonresident.

■ Cecelia's reliance upon *Sheffield* v. *Sheffield*, 207 Va. 288, 148 S.E.2d 771 (1966), is misplaced. There, the parties were divorced in Virginia. In the divorce proceeding, the Virginia court had personal jurisdiction over both parties. Thereafter, the ex-husband moved to Illinois and stopped making alimony and support payments. The ex-wife filed suit in Virginia and had her ex-husband personally served in Illinois. The evidence established that the ex-husband had actual notice of the Virginia proceeding. The trial court denied the ex-wife's petition, in part because it questioned whether the court had jurisdiction over the ex-husband. We held that under the circumstances obtaining in *Sheffield* the Virginia trial court had continuing jurisdiction over the ex-husband. The situation is entirely different in the instant appeal.

In *Sheffield*, the Virginia Court originally had personal jurisdiction and subject matter jurisdiction over both parties for purposes of divorce, child support, and spousal support. Here, it did not. Here, the Virginia court's jurisdiction over Lawrence never extended to matters of spousal support. There, the jurisdiction could be said to continue. Here, by contrast, the pertinent jurisdiction never existed. In *Sheffield*, the ex-husband's due process rights were not offended. Here, they would be. *Sheffield* has no application to a situation where, as here, the Virginia courts did not initially have personal jurisdiction over both the parties.

■ We hold, in light of the foregoing, that registration of a foreign decree in Virginia, pursuant to RURESA, coupled with personal service on the defendant in a foreign jurisdiction is not sufficient to create *in personam* jurisdiction over the defendant in Virginia.

We turn now to the question whether the trial court erred in failing to declare void the 1980 orders which awarded judgment to

Cecelia against Lawrence. In his opening brief, Lawrence attacks the validity of these judgments on the basis of Code § 8.01-322. However, given the facts of this case, that code section is inapplicable. We so held in *Mitchell* v. *Mitchell*, 227 Va. 31, 314 S.E.2d 45 (1984). There, we said that "§ 8.01-322 is intended to protect a party who has no knowledge at all of litigation affecting him." *Id.* at 38, 314 S.E.2d at 48. In the instant appeal, Lawrence had knowledge of Cecelia's suits to collect arrearages. He must, therefore, utilize another procedure to have declared void the 1980 judgment orders. Therefore, we will affirm the trial court's denial of relief.

Record No. 820683 — *Affirmed.*
Record No. 820740 — *Affirmed.*