JACQUELIN S. ALLSUP v. GUY L. ALLSUP, JR.

No. 102PA88

(Filed 8 December 1988)

1. **Divorce and Alimony § 21.8; Parent and Child § 10— URESA—due process right to hearing**

    The Uniform Reciprocal Enforcement of Support Act does not allow foreign support orders to become effective automatically at the time of registration without a hearing in violation of the due process rights of support obligors since "registration" requires (1) the filing of documents described in N.C.G.S. § 52A-29, and (2) the confirmation after twenty days, during which time the obligor may petition the court to vacate the registration or for other relief, as described in N.C.G.S. § 52A-30(b), and the foreign support order does not become enforceable until the obligor has had an ample opportunity to exercise his due process right to a hearing and the confirmation step is completed.

2. **Divorce and Alimony § 21.8— URESA—retroactive modification of foreign orders—failure to raise question before confirmation**

    The Uniform Reciprocal Enforcement of Support Act as applied did not violate respondent's due process right to be heard on the question of whether alimony arrearages due under South Carolina orders should be modified retroactively under South Carolina law to reflect his changed financial circumstances where respondent was afforded a full hearing on a petition to vacate registration of the South Carolina orders, but the modification request was not filed until more than a year after the hearing on his petition and the confirmation of the orders. Any right to a hearing on retroactive modification was waived by respondent's failure to assert his rights under the law of South Carolina while the orders retained their foreign characteristics prior to confirmation.

ON respondent's petition for discretionary review of a decision of the Court of Appeals, 88 N.C. App. 533, 363 S.E. 2d 883 (1988), which affirmed in part and reversed in part the order of *Bissell, J.*, entered 29 December 1986 in District Court, MECKLENBURG County. Heard in the Supreme Court 10 October 1988.

*Petree Stockton & Robinson, by J. Neil Robinson, for petitioner-appellee.*

*James, McElroy & Diehl, P.A., by William K. Diehl, Jr. and Barbara J. Hellenschmidt, for respondent-appellant.*

MARTIN, Justice.

The sole issue for review in this alimony case is whether the registration and enforcement provisions of the Uniform Reciprocal Enforcement of Support Act (URESA) violate the due process rights of support obligors. We hold that they do not and therefore affirm the Court of Appeals.

Summarized as briefly as possible, the record reveals the following pertinent facts:

### South Carolina Proceedings

The parties to this suit were divorced in South Carolina on 29 November 1979. At that time the Darlington County Family Court entered an order granting Mr. Allsup custody of the couple's two minor children and requiring him to pay Mrs. Allsup $600 per month in alimony. Mrs. Allsup, a paraplegic, was required to forward to Mr. Allsup as child support the Social Security payments she received on behalf of the two children due to her disability.

On 6 April 1981 the parties appeared at a hearing for reconsideration of the alimony awarded. In the interim Mr. Allsup had moved to North Carolina. By order entered 15 April 1981, the court adopted a private agreement between the parties reducing the alimony payment to $209.69 per month and allowing Mrs. Allsup to retain all Social Security payments instead of forwarding them.

On 9 October 1984, a hearing was held on motions filed by Mrs. Allsup seeking an increase in the amount of the alimony and seeking to have Mr. Allsup held in contempt for failure to comply

with the terms of the 1981 order. By an order dated 13 October 1984, the court directed Mr. Allsup to pay $1,120 in arrearages and to increase the monthly alimony payment by $280 to reflect the decrease in Mrs. Allsup's Social Security benefits that had occurred when the elder of the couple's two children reached majority. The order further directed Mr. Allsup to increase the alimony payment again when the younger child reached majority.

The court held another hearing on 9 November 1984 with respect to Mrs. Allsup's renewed motion for a finding of contempt and issuance of a bench warrant. Mr. Allsup did not appear at the hearing. His counsel of record did appear, advising the court that he appeared only because the motion papers had been served upon him, but that he was not in a position to accept service for Mr. Allsup. By order of 15 November 1984, the court ruled that service was valid and held Mr. Allsup in contempt. The court further found that Mrs. Allsup was entitled to receive $1,605 in support arrearages.

### North Carolina Proceedings

On 13 March 1985, pursuant to N.C.G.S. § 52A-29, Mrs. Allsup submitted to the Mecklenburg County Clerk of Court a Notice of Registration of the four South Carolina support orders detailed above. On 2 April 1985 Mr. Allsup filed a petition requesting that registration of the orders be vacated on statutory and constitutional grounds.

The Mecklenburg County District Court entered an order dated 10 July 1985 which denied the petition to vacate and confirmed registration of the orders. Mr. Allsup filed a motion to vacate the 10 July order, contending that he had not received notice of a hearing. The motion was granted in an ex parte order dated 24 July. However, following a hearing on 12 August 1985, the court confirmed the registration.

Thereafter the parties conducted informal discovery and Mrs. Allsup filed motions with the court requesting that alimony arrearages be reduced to judgment and Mr. Allsup be held in contempt. Mr. Allsup filed a motion to modify the alimony obligation on 7 August 1986. The matters came on for hearing on 20 August. In an order dated 29 December 1986, the court held that the South Carolina support orders were properly registered and were

entitled to full faith and credit and enforcement in North Carolina. The court entered judgment in the amount of $11,829 for arrearages and ordered Mr. Allsup to begin paying $769.69 per month in alimony, an amount reflecting the fact that Mrs. Allsup no longer received Social Security payments on behalf of the children. Mrs. Allsup's motion for contempt was denied and Mr. Allsup's motion for modification was ordered to be determined at a future hearing.

The Court of Appeals affirmed the trial court in pertinent part, holding that although the South Carolina orders were technically not entitled to full faith and credit, they were enforceable in North Carolina under principles of comity; thus, the trial judge's error in enforcing them under full faith and credit principles was a harmless one.

[1] On this appeal respondent-appellant Mr. Allsup contends that inasmuch as the URESA statute required no hearing prior to registration of the South Carolina support orders in North Carolina, he was deprived of the due process of law as guaranteed by the fourteenth amendment to the United States Constitution and by the law of the land clause of the North Carolina Constitution.

The stated purpose of the Uniform Reciprocal Enforcement of Support Act is "to improve and extend by reciprocal legislation the enforcement of duties of support and to make uniform the law with respect thereto." N.C.G.S. § 52A-2 (1984). It was drafted in order to address the problems created by recalcitrant obligors who avoid enforcement of their support obligations by roving from state to state. Every state and organized territory of the United States has adopted some form of the Act. North Carolina first enacted URESA in 1951 as Chapter 52A of the General Statutes. A substantially revised version of the statute, which added the registration and enforcement sections at issue on this appeal, was enacted in 1975 as sections 52A-26 through 52A-30.

Under this statutory scheme, registration and enforcement are entirely separate procedures. *Fleming v. Fleming*, 49 N.C. App. 345, 271 S.E. 2d 584 (1980); *Pinner v. Pinner*, 33 N.C. App. 204, 234 S.E. 2d 633 (1977). Upon registration, the foreign support order may be enforced in the same manner as a support order issued by a court of this state. N.C.G.S. § 52A-30(a) (1984). An obligee seeking to register a foreign support order in North Caro-

lina submits to the clerk of court certified copies of the order and other pertinent information. The clerk transmits a notice of registration and a copy of the support order to the obligor by certified or registered mail. N.C.G.S. § 52A-29 (1984). The obligor then has twenty days after the mailing of notice in which to petition the court to vacate the registration or for other relief. If he fails to petition, the registered support order is confirmed. N.C.G.S. § 52A-30(b) (1984).

In mounting his constitutional attack, Mr. Allsup argues that these provisions allow foreign support orders to become effective automatically at the time of registration, without a hearing as to their validity or the obligations they impose. This argument fails to perceive that "registration" actually takes place in two stages: (1) the filing of documents described in section 52A-29, and (2) the confirmation of registration after twenty days as described in section 52A-30(b). The foreign support order does not become effective and enforceable until the confirmation step is completed.

We reach this conclusion by applying standard principles of statutory construction. In seeking to discover and give effect to legislative intent, an act must be considered as a whole and none of its provisions deemed useless or redundant if they can reasonably be considered as adding something to the act which is in harmony with its purpose. *Martin v. Thornburg*, 320 N.C. 533, 359 S.E. 2d 472 (1987); *Town of Atlantic Beach v. Young*, 307 N.C. 422, 298 S.E. 2d 686, *appeal dismissed*, 462 U.S. 1101, 77 L.Ed. 2d 1328 (1983). Were the order effective upon the mere filing of the documents, there would be no reason to include the confirmation provision. *See State ex rel. Greebel v. Endsley*, 269 Ind. 174, 379 N.E. 2d 440 (1978) (interpreting a version of URESA similar to North Carolina's); *Monson v. Monson*, 85 Wis. 2d 794, 271 N.W. 2d 137 (Wis. Ct. App. 1978) (construing statute identical to N.C.G.S. § 52-30).

The procedure outlined above thus provided ample opportunity for Mr. Allsup-to exercise his due process right to a hearing. The South Carolina support orders, although filed, could not become effective until confirmed, and confirmation could not take place until the twenty-day period for petitions had elapsed. Such a scheme does not on its face violate due process.

[2] Nor did URESA as applied in this case violate respondent's due process rights. Mr. Allsup contends that he was not afforded an opportunity to be heard on the question of whether the alimony arrearages due under the South Carolina orders should be modified retroactively to reflect his changed financial circumstances. He maintains that South Carolina law permits such retroactive modification, while North Carolina law does not, and therefore insists that URESA's transubstantiation of the South Carolina orders into North Carolina orders pursuant to N.C.G.S. § 52A-30(a) deprived him of the potential right to modify his support obligation. We disagree.

It is not necessary under the circumstances of this case to determine whether North Carolina law prohibits retroactive modification. Even assuming that retroactive modification became unavailable when the South Carolina orders were confirmed and transformed into North Carolina orders, respondent is not entitled to relief because he failed to request such modification while the orders retained their foreign characteristics, that is, prior to confirmation.

The record demonstrates that Mr. Allsup filed a petition to vacate registration within the twenty-day statutory time period after Mrs. Allsup filed the orders in North Carolina. However, Mr. Allsup apparently did not attend a hearing prior to confirmation of the orders on 10 July 1985. The record is unclear as to whether a hearing was in fact scheduled and what steps, if any, were taken to provide him with notice. Mr. Allsup subsequently contended that he had not received notice of any hearing and, on that basis, he obtained an order setting confirmation aside. He was then afforded a full hearing on 12 August on his petition to vacate registration. At that time he had an opportunity to attack the validity of the South Carolina orders and to raise any defenses available to him, which he apparently, albeit unsuccessfully, did. More significantly, he also had the opportunity at that hearing to request other relief, such as modification of the support obligation imposed by the orders. This he failed to do. His petition to vacate did not include a request for retroactive modification, and no request was made during the confirmation hearing. In fact, the modification request was not filed until August of 1986, more than a year after the hearing on his petition and the confirmation of the orders. Thus, under the facts of this

case, any right to a hearing on retroactive modification was waived by Mr. Allsup's failure to assert his rights under the law of South Carolina prior to confirmation. Due process requires only that the obligor be provided the opportunity to assert his rights in timely fashion. An obligor who sleeps on his rights may lose them.

We hold that the URESA provisions at issue comport with the due process requirements of the federal and state constitutions. The decision of the Court of Appeals is hereby

Affirmed.