**HUDGINS, Appellant,**

v.

**HUDGINS, Appellee.**

[Cite as *Hudgins v. Hudgins* (1992), 80 Ohio App.3d 707.]

Court of Appeals of Ohio,
Henry County.

No. 7–91–21.

Decided July 21, 1992.

708

*John Donovan,* for appellant.

*Gerald Laver,* Assistant Prosecuting Attorney, for appellee.

Evans, Judge.

This is an appeal by Gerald V. Hudgins, a.k.a. Gerald D. Hudgins ("appellant") from a judgment entered in the Court of Common Pleas of Henry County ordering him to pay an increased amount of child support following the registration of an Indiana child support order, pursuant to the Uniform Reciprocal Enforcement of Support Act, R.C. 3115.32 ("URESA").

On November 3, 1982, appellant and his former wife, Lee Eicher Kruse ("appellee"), were divorced in Indiana. Appellee was awarded custody of the parties' minor child, Trevor, and appellant was ordered to pay child support in the amount of $50 per week. Both parties to this action have since left Indiana. Appellant now resides in Virginia, and appellee now resides in Henry County, with the parties' minor son.

On February 13, 1990, appellee filed an application to register the Indiana support order in the Henry County Court of Common Pleas, pursuant to R.C. 3115.32. Appellant was properly served with notice of the registration. When appellant did not object to the registration within the prescribed twenty-day period, see R.C. 3115.32(H), the order was confirmed by the court.

On June 6, 1990, following registration of the foreign order, appellee filed a motion for an increase in child support and for a lump sum judgment on arrears, based on appellant's increased earning capacity and the needs of the child. Appellant filed a motion to dismiss, contesting the trial court's exercise of jurisdiction over him. At the court's request, the parties entered into a stipulation of facts and submitted briefs before a ruling was made on the motion to dismiss. The stipulation set forth the following with respect to the parties' whereabouts during their marriage:

"# 8 In 1979, Hudgins lived in an apartment in Dayton, Ohio at the instance and request of his employer for approximately 3 months and during said three month period Hudgins performed work for his employer at his

employer's request. During this period Hudgins would travel back to Indiana on weekends to his marital residence in Indiana.

"# 9 On May 21st and 22nd, 1978, the parties stayed at a Holiday Inn in Dayton, Ohio.

"# 10 From May 22nd through May 29th, 1978, the parties visited Kruse's parents in Napoleon, Ohio.

"# 11 On September 1st and 2nd, 1978, the parties attended a wedding in Steubenville, Ohio.

"# 12 On October 7th, 1978, the parties attended a football game in Columbus, Ohio.

"# 13 On December 2nd and 3rd, 1978 the parties visited Kruse's parents in Napoleon, Ohio.

"# 14 In 1979 and 1980, the parties visited Kruse's parents in Napoleon, Ohio, approximately two to three times.

"# 15 The parties never resided permanently in Ohio during their marriage."

Appellant's motion to dismiss was overruled in the trial court on April 3, 1991. On October 23, 1991, the court entered final judgment against appellant for an agreed-upon support arrearage. The court further ordered an increased amount in child support, retroactive to June 6, 1990. Appellant was also ordered to pay an allocation of the child's medical expenses. Appellant appealed the court's order, asserting three assignments of error:

"I. The trial court erred in finding that the Petitioner/Respondent–Appellant waived jurisdictional defenses.

"II. The trial court erred when it denied the Petitioner/Respondent–Appellant's motion to dismiss based upon the finding that sufficient minimum contacts exist in Ohio to obtain personal jurisdiction when the beneficiaries of child support reside in Ohio.

"III. The trial court erred when it found it had jurisdiction under the Uniform Reciprocal Enforcement of Support Act (R.C. 3115.01 *et seq.*) to increase the amount of child support."

I

Appellant complains that the trial court erred in finding that he waived his jurisdictional defenses by not responding to the notice of registration of the foreign support order. Essentially, the court, in its entry overruling appellant's motion to dismiss, impliedly made such finding by asserting that

appellant, by statute, had only twenty days in which to assert any defenses regarding the registered support order.

The relevant language of R.C. 3115.32(H) and (I) provides as follows:

"(H) The obligor has twenty days after the mailing of notice of the registration in which to petition the court to vacate the registration or for other relief. If he does not so petition the registered support order is confirmed.

"(I) At the hearing to enforce the registered support order the obligor may present only matters that would be available to him as defenses in an action to enforce a foreign money judgment. * * * "

 It is clear that the registration section of the Act provides a twenty-day period in which an obligor may contest registration of a foreign support order. However, contrary to the trial court's finding that appellant has waived all defenses, even in actions subsequent to and unrelated to the registration itself, we find that the defenses which may be asserted in a registration action are limited to those which relate directly to the validity of the original, foreign decree. See *Oregon ex rel. Worden v. Drinkwalter* (1985), 216 Mont. 9, 12, 700 P.2d 150, 152; *Ackerman v. Yanoscik* (Tex.Civ. App.1980), 601 S.W.2d 72. Thus, the only defenses appellant has waived by his failure to resist the registration of the order in this case would be, for instance, lack of jurisdiction in the Indiana (rendering) court, or existence of some procedural defect in the rendering court which would nullify the judgment. Therefore, appellant was free to assert any relevant defenses in subsequent actions concerning enforcement or modification of the (now) Ohio support order, including, and especially, the registering court's lack of personal jurisdiction over him. To rule otherwise would violate the obligor's due process rights.[1] *Stephens v. Stephens* (1985), 229 Va. 610, 618, 331 S.E.2d 484, 489 (Act can not properly be read to so completely break down the boundaries of the states and to so thoroughly do away with the minimum contacts required by due process before a state can assert personal jurisdiction over a nonresident). See, also, *Bjugan v. Bjugan* (Wyo.1985), 710 P.2d 213; *Davanis v. Davanis* (App.1986), 132 Wis.2d 318, 392 N.W.2d 108; *Ackerman v. Yanoscik* (Tex.Civ.App.1980), 601 S.W.2d 72; *O'Halloran v. O'Halloran* (Tex.Civ.App.1979), 580 S.W.2d 870; *Pinner v. Pinner* (1977), 33

---

1. Since it is incumbent that the Act be administered and enforced uniformly throughout the United States in order to accomplish its intended goals, we support our position with those cases from this state and others which represent consistent use and interpretation of the statute.

N.C.App. 204, 234 S.E.2d 633; *Sabrina D. v. Thomas W.* (1981), 110 Misc.2d 796, 443 N.Y.S.2d 111.

■ URESA has been enacted in all of the United States and most United States territories, in either its original or revised form, for the purpose of facilitating the enforcement of existing orders for support payments for dependent children. An action under URESA is generally initiated in the obligee's home state, either for enforcement of an alleged duty of support under the certification provisions of the statute, see R.C. 3115.12, or for registration of an existing order from the issuing state. See R.C. 3115.32. Although the Act provides for notice to an obligor that the obligee has filed a registration action, a court does not need *in personam* jurisdiction over an obligor for the registration of a foreign support order which was properly rendered in a state having jurisdiction over the parties to the action. See *Allsup v. Allsup* (1988), 323 N.C. 603, 606, 374 S.E.2d 237, 238–239; *Davanis v. Davanis* (App.1986), 132 Wis.2d 318, 392 N.W.2d 108 (without personal jurisdiction over obligor, URESA cannot be relied on as granting power to modify foreign support order); *Gingold v. Gingold* (1984), 161 Cal.App.3d 1177, 208 Cal.Rptr. 123; *Fleming v. Fleming* (1980), 49 N.C.App. 345, 271 S.E.2d 584; *Pinner v. Pinner* (1977), 33 N.C.App. 204, 234 S.E.2d 633.

■ Pursuant to R.C. 3115.32(G), upon proper registration the foreign state's order essentially becomes an Ohio order, and is subject to any subsequent modification or enforcement by an Ohio court. However, such action may only be taken where the court properly has personal jurisdiction over the obligor. As stated by the Supreme Court of Nebraska:

"Mere registration without further action does not subject the obligor to any peril which would motivate a reasonable person to come forward and object to the court's jurisdiction. [Thus] an obligor may raise a challenge to the court's exercise of personal jurisdiction at a subsequent enforcement [or modification] proceeding." *Wilson v. Ransom* (1989), 233 Neb. 427, 433–434, 446 N.W.2d 6, 10.

■ The trial court's final decision in this case did not rest upon the court's finding of waiver of defenses. Instead, the court went on to find that it had jurisdiction over appellant due to his "minimum contacts" with the state of Ohio. In overruling appellant's motion to dismiss appellee's motion for increased child support due to the court's lack of personal jurisdiction, the court found the following:

"The children [*sic*], the beneficiaries of the child support, are residents of Henry County, Ohio. This minimal contact is sufficient to obtain personal jurisdiction over Hudgins who is obligated to pay child support."

Therefore, the court's finding of waiver of defenses apparently had no prejudicial effect on its ultimate decision that it properly could exercise personal jurisdiction over appellant. The assignment of error is not well taken, and is therefore overruled.

## II

Finding that appellant does not have sufficient contacts with Ohio to give the trial court personal jurisdiction over him, we find merit in this assignment of error. We therefore sustain the second assignment of error.

A URESA action is generally initiated by an obligee "to enforce the legal obligation to support a dependent or dependents by one who has left the state in which the dependents reside." *Levi v. Levi* (1960), 170 Ohio St. 533, 11 O.O.2d 364, 166 N.E.2d 744, syllabus. The proper URESA procedure is detailed in R.C. 3115.09, which specifies that an "initiating" court, subsequent to an obligee's filing of a complaint,[2] should verify the complaint, taking action pursuant to R.C. 3115.12, which provides:

"If the initiating court finds that the complaint sets forth facts from which it may be determined that the obligor owes a duty of support and that a court of the responding state may obtain jurisdiction of the obligor or his property, it shall so certify and transmit to the responding court three certified copies of the complaint, the certificate, and an authenticated copy of sections 3115.01 to 3115.34 of the Revised Code. * * * "

R.C. 3115.22, 3115.23, and 3115.25 then prescribe the actions to be taken by a responding court to ensure that the obligee ultimately receives the proper support payments in her home state, *i.e.*, the "initiating" state. R.C. 3115.22. See, *e.g.*, *Chisholm v. Chisholm* (1977), 197 Neb. 828, 251 N.W.2d 171; *Sullivan v. Sullivan* (1981), 98 Ill.App.3d 928, 54 Ill.Dec. 207, 424 N.E.2d 957.

Although we have found that a foreign support order may be registered and enforced in an obligee's state of residency, in order to meet the due process standard of "fair play and substantial justice," any court which acts to modify the original support order must have a constitutionally sound basis to assert jurisdiction over the affected parties. See, *e.g.*, *Davanis v. Davanis* (App.1986), 132 Wis.2d 318, 392 N.W.2d 108 (without personal jurisdiction over obligor, URESA cannot be relied on as granting power to modify foreign

---

2. Needless to say, a support order rendered by a "foreign" state must first be registered in the obligee's new "home" state pursuant to R.C. 3115.34, to establish the order as one issued by the initiating state. See, *e.g.*, *State on Behalf of McDonnell v. McCutcheon* (Minn.1983), 337 N.W.2d 645 (result of obligee's failure to register foreign judgment was that the order was not properly before the court for either enforcement or modification).

support order); *Gingold v. Gingold* (1984), 161 Cal.App.3d 1177, 208 Cal.Rptr. 123. In *Kulko v. Superior Court* (1978), 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132, the United States Supreme Court addressed the issue of due process in a context analogous to the one before us. Following the "minimum contacts" test of *Internatl. Shoe Co. v. Washington, infra,* and the "purposeful availment" test of *Hanson v. Denckla, infra,* the *Kulko* court held that, absent the obligor's "purposeful availment" of the "benefits and protection of California's laws," the California courts could not assert jurisdiction over him based merely upon a few brief visits to that state and the payment of child support to the California obligee. *Kulko,* 436 U.S. at 94–96, 98 S.Ct. at 1698– 1699, 56 L.Ed.2d at 142–144. See *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 101 (defendant is subject to another state's jurisdiction if he has established "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' "); *Hanson v. Denckla* (1958), 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283, 1298 ("[I]t is essential in each case that there be some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State[.]"). The *Kulko* court further noted that the obligee's remedy lay in proceeding under the Revised Uniform Reciprocal Enforcement of Support Act, which, having been enacted in both of the involved states, provided "a mechanism for communication between court systems in different States, in order to facilitate the procurement and enforcement of child support decrees where the dependent children reside in a State that cannot obtain personal jurisdiction over the defendant." *Id.,* 436 U.S. at 98–99, 98 S.Ct. at 1700, 56 L.Ed.2d at 145.

Thus, the Supreme Court clearly held that personal jurisdiction may not be exercised over an obligor based simply upon the fact that the obligee now lives in the forum state. We find *Kulko* directly apposite to the case before us.[3] Consequently, as stated by a Florida appeals court:

"We are bound by the decisions of the United States Supreme Court when those decisions invoke a provision of the United States Constitution. Such is the case here where the due process provisions of the Constitution form the basis of the *Kulko* decision." *Gioia v. Gioia* (Fla.App.1983), 435 So.2d 367, 368.

The Ohio legislature has simplified the "minimum contacts" jurisdictional analysis by enactment of the Ohio long-arm statute. Civ.R. 4.3(A) and R.C.

---

**3.** Moreover, the contacts of the obligor with the forum state in *Kulko* were even more substantial than the "minimum contact" relied on by the trial court herein.

2307.382 set forth those circumstances which would constitute a nonresident's minimum contacts with Ohio, such that the substantial fairness test of the Due Process Clause is satisfied. Furthermore, it has been held that the Ohio legislature intended to extend the jurisdiction of its courts to the constitutional limits by the enactment of the long-arm statute. See *In–Flight Devices Corp. v. Van Dusen Air, Inc.* (C.A.6, 1972), 466 F.2d 220, 224–225; *Lyman Steel Corp. v. Ferrostaal Metals Corp.* (N.D.Ohio 1990), 747 F.Supp. 389, 393–394. Therefore, to properly exercise jurisdiction over appellant in this case, the trial court was required to find "fulfillment of one of the specified circumstances found in Civ.R. 4.3(A) and R.C. 2307.382(A)" (the statute is substantially similar to the Civil Rule); *Ohio State Tie & Timber, Inc. v. Paris Lumber Co.* (1982), 8 Ohio App.3d 236, 8 OBR 309, 456 N.E.2d 1309, paragraph one of the syllabus.

The trial court herein determined that personal jurisdiction could be obtained over appellant, a nonresident obligor, because his son, who was the beneficiary of the child support, resided in Ohio. Although the court found this relationship sufficient to subject appellant to Ohio jurisdiction, no determination was made of how long-arm jurisdiction over the nonresident appellant could be justified under Civ.R. 4.3(A) or R.C. 2307.382(A). For the reasons which follow, we find that the court's assumption of jurisdiction over appellant was error which deprived appellant of his right to due process.

Appellee argues that the court may use any one of three subsections of the Ohio long-arm statute to exercise jurisdiction over appellant. Under Civ.R. 4.3(A), service upon a nonresident is permitted when:

"[he] has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:

"(1) Transacting any business in this state;

"* * *

"(8) Living in the marital relationship within this state notwithstanding subsequent departure from this state, as to all obligations arising for spousal support, custody, child support, or property settlement, if the other party to the marital relationship continues to reside in this state;

"(9) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured by the act in this state[.]"

Appellee first contends that appellant is subject to "long-arm" jurisdiction because the "cause of action" arose out of appellant's transacting

business in the state of Ohio, as specified by Civ.R. 4.3(A)(1) and R.C. 2307.382. We disagree.

In *Kleinfeld v. Link* (1983), 9 Ohio App.3d 29, 30–31, 9 OBR 30, 32, 457 N.E.2d 1187, 1190, we enumerated several factors to be weighed in determining a defendant's amenability to jurisdiction arising out of his "business" contacts with a state:

"(1) established activity by nonresident in the forum state;

"(2) nonresident takes advantage of privileges and benefits of forum state;

"(3) nonresident solicits business through agents or advertising reasonably calculated to reach the forum state;

"(4) it is foreseeable that nonresident will litigate in the forum state; and

"(5) convenience to the litigants and fairness of requiring nonresident to come to the forum state."

Given these factors, we find that appellant has not transacted "business" in Ohio which would warrant the trial court's exercise of personal jurisdiction over appellant on the basis of his "business" contacts. Although appellant enters Ohio several times a year as required by his employer for the purpose of maintaining data processing equipment, it is the employer who has potentially established business activity in Ohio. Thus, the employer, if anyone, has availed itself of the protection and the benefits of Ohio. Furthermore, we do not find it foreseeable that, simply because appellant has been in Ohio at the request of his employer, he would be subjected to the state's jurisdiction in an action concerning his obligation to pay child support, unless personally served while in Ohio. See *World–Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (foreseeability of suit may be satisfied if coupled with purposeful conduct outside the forum to somehow derive benefits from the forum state). The facts at bar do not amount to the transaction of business for purposes of asserting "general" jurisdiction, nor would such business activity relate to the subject of the complaint, as the appellee has alleged, for purposes of asserting "specific" jurisdiction. Contrary to appellee's suggestion, we find that the exercise of parental rights and the performance of parental responsibilities do not constitute the purposeful transaction of "business" activities.[4]

---

4. In *Yarnick v. Stegkamper* (Mar. 6, 1985), Lawrence App. No. 1707, unreported, 1985 WL 6574, the court asserted jurisdiction over an obligor pursuant to Civ.R. 4.3(A)(1), stating that he "transacted the business of being a father" by visiting the child and by sending support payments and birthday cards through the mail to Ohio. We disagree with that court's conclusions, as did the Court of Appeals for Franklin County, which found that such conduct of an obligor "cannot be characterized as transacting business within this state as contemplated by Civ.R. 4.3(A)(1)[.]" *Massey–Norton v. Trammel* (1989), 61 Ohio App.3d 394,

■ Next, appellee cites *Hostetler v. Kennedy* (1990), 69 Ohio App.3d 299, 590 N.E.2d 793, in support of her contention that appellant's failure to timely pay all ordered support constitutes tortious conduct pursuant to Civ.R. 4.3(A)(9).[5] See *Hostetler*, 69 Ohio App.3d at 303, 590 N.E.2d at 795; see, also, *Wayne Cty. Bur. of Support v. Wolfe* (1991), 71 Ohio App.3d 765, 595 N.E.2d 421 ("failure to support one's minor children constitutes a tortious act or omission in Ohio conferring in personam jurisdiction under Civ.R. 4.3[A][3]"). Appellee maintains that a failure to pay court-ordered support payments is "certain to deprive the dependent child of the financial support to which the child is entitled" and creates a "reasonable expectation that the child would be injured thereby." However, in applying Civ.R. 4.3(A)(9), it is necessary to construe the rule *in toto*, and not just selectively utilize the words "tortious conduct" as the basis for the application of long-arm jurisdiction. The rule provides for service of the nonresident defendant when he has caused an event to occur out of which the claim that is the subject of the complaint arose. Further, the claim must have arisen as a result of the defendant's causing intentional injury to the plaintiff within the state by an act committed outside the state. It is axiomatic that a complaint in tort must present an allegation of tortious injury. However, we find no suggestion anywhere in the record that Trevor has suffered an injury of any kind in this action. Thus, it cannot be reasonably argued that these claims for increased support and reduction of arrearages to judgment arise out of any tort committed by appellant, or out of an "act" of any kind on the part of appellant. See, *e.g.*, *In re Marriage of Lackey* (1983), 143 Cal.App.3d 698, 703, 191 Cal.Rptr. 309, 312 (divorced father's obligation to pay arrearages is not based on a claim in tort, but upon failure to comply with a court order).

In *State ex rel. Stone v. Court* (1984), 14 Ohio St.3d 32, 14 OBR 333, 470 N.E.2d 899, the Supreme Court of Ohio refused to approve a court's exercise of jurisdiction over an alleged obligor, resident of Texas, based upon the mother and child's residence in Ohio when the child was conceived and born in Alabama, and the defendant had no other contact with Ohio. Although the court found that the act of sexual intercourse in Ohio, resulting in conception, would be a basis of personal jurisdiction under R.C. 3111.06(B) (the parentage statute), it refused to "apply 'tortious injury' under [the long-arm statute]

---

396, 572 N.E.2d 821, 823, motion to certify overruled in (1989), 44 Ohio St.3d 714, 542 N.E.2d 1110.

**5.** The court in *Hostetler* relied on Civ.R. 4.3(A)(3) as its basis of personal jurisdiction, rather than the section relied on by appellee herein. Civ.R. 4.3(A)(3) permits the exercise of long-arm jurisdiction over a nonresident defendant who "[has caused] tortious injury by an act or omission in this state * * *."

* * * for the purpose of extending long-arm personal jurisdiction" in such cases. *Id.* at 34, 14 OBR at 334, 470 N.E.2d at 901. The *Stone* court cited *Kulko*, stating that " 'an essential criterion in all cases is whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require [an obligor] to conduct his defense in that State.' " *Id.*, citing *Kulko*, *supra*, 436 U.S. at 92, 98 S.Ct. at 1697, 56 L.Ed.2d at 141. See, *e.g.*, *Howells v. McKibben* (Minn.1979), 281 N.W.2d 154 (paternity as a result of intercourse in the forum state, *coupled with clear presentation of injury* as a result of nonresident defendant's actions and failure to pay support, may constitute a tort for jurisdictional purposes).

■ We find the only circumstance enumerated in Civ.R. 4.3(A) or in R.C. 2307.382(A) potentially applicable to the facts at bar is provided by Civ.R. 4.3(A)(8). This section specifically allows jurisdiction over a nonresident who is obligated to pay child support, if at one time he resided in the marital relationship in this state but has subsequently left, and if the other party to the marriage remains in Ohio.

Recognizing this requirement, appellee attempted to prove that appellant resided in Ohio during his marriage to her. Appellee based her argument on *Snelling v. Gardner* (1990), 69 Ohio App.3d 196, 590 N.E.2d 330, a decision which reversed the trial court's determination that it lacked personal jurisdiction over the defendant because he was domiciled in another state during the time in question. The Court of Appeals for Franklin County found the defendant's frequent visits, including a three-week stay with the plaintiff, and the fact that he sought employment in Ohio and was employed in Ohio during the time in question sufficient to constitute residency.

The facts in the case at hand are distinguishable from those in *Snelling*. We find that appellant's infrequent visits, and his one-time three-month stay in a Dayton, Ohio apartment as required by his employer, while his family remained in Indiana, do not constitute residency as established in *Snelling*. Appellant's business-related activities in Ohio were not the result of any "purposeful availment" on appellant's part, but were conducted at the instruction of his employer. Further, although appellant choose to enter Ohio on several occasions during the marital relationship, these trips were infrequent, of short duration, and did not comprise residency for jurisdictional purposes.

As stated by the court in *Ohio State Tie & Timber, supra*, "jurisdiction exists over a nonresident only where one of the specified circumstances found in [Ohio's long-arm statute] has been fulfilled." *Massey–Norton*, 61 Ohio App.3d at 396, 572 N.E.2d at 822, citing *Ohio State Tie & Timber* at paragraph one of the syllabus. Although the trial court assumed jurisdiction

over appellant, it made no finding that the jurisdictional statute was satisfied; we find that it was not.

Since the trial court herein erred in assuming jurisdiction over appellant's person, his motion to dismiss for lack of jurisdiction should have been granted. The second assignment of error is sustained.

### III

As stated, *supra*, personal jurisdiction over an obligor is not required under the statute, if an obligee seeks merely to register the support order in the state where the child resides.[6] The relevant statute states as follows:

"[Once a foreign support order is registered it] shall be treated in the same manner as a support order issued by a court of this state. It has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this state and may be enforced and satisfied in like manner." R.C. 3115.32(G).

The language of the statute is quite clear that, once registered in Ohio, a foreign support order becomes an Ohio support order. Ohio support orders can be modified if the necessary changed circumstances are established. However, jurisdiction over the obligor is a prerequisite for enforcing or modifying any support order. In this case, the trial court lacked personal jurisdiction over appellant; therefore, any modification rendered by the trial court is void and unenforceable.

Case law in Ohio is inconsistent on the modification issue. In those cases where modification has been denied, courts have relied on the authority of *Cty. of San Diego v. Elavsky* (1979), 58 Ohio St.2d 81, 86, 12 O.O.3d 88, 91, 388 N.E.2d 1229, 1232, wherein the Supreme Court held that "the amount of support ordered in the initial URESA proceeding must conform to the amount determined in a previous divorce case * * *." Although the *Elavsky* case was not concerned with modifying a registered foreign support order, Ohio courts have taken it to mean that an URESA proceeding is not the proper avenue to pursue modifications of support orders, but should only be used to enforce prior support orders. See, *e.g.*, *Colston v. Colston* (Aug. 24, 1990), Ross App. No. 1649, unreported, 1990 WL 127045; *Jacobs v. Jacobs* (1988), 62 Ohio App.3d 271, 575 N.E.2d 480. In *Colston*, the fourth appellate district held that even though a foreign support order was properly registered, on the basis of *Elavsky* it had no subject matter jurisdiction to modify the order.

---

**6.** Alternatively, the obligee could, under R.C. 3115.32, have the foreign order registered in the *obligor's* home state, which would have jurisdiction over the obligor's person for purposes of enforcement or modification.

Other cases appellant has cited do not deal with the modification of a registered foreign support order, but, in fact, have found that *responding* courts (which in this case would be Virginia, appellant's residential state) are without jurisdiction to modify previous support orders. *Briggs v. Briggs* (Feb. 2, 1986), Clermont App. No. CA86–09–064, unreported, 1987 WL 7177; *Nazer v. Klingaman* (Dec. 30, 1982), Ottawa App. No. OT–82–23, unreported, 1982 WL 6701. We believe that such cases have misinterpreted the statute and the decision in *Elavsky*. See R.C. 3115.32(G).

In *Storey v. Storey* (Aug. 17, 1990), Greene App. No. 89–CA–95, unreported, 1990 WL 119262, the court decided, pursuant to the language of R.C. 3115.-32(G), that, once properly registered, the foreign support order should be treated as if the Ohio court had issued it, and thus could decide whether to modify the order. See *Bullard v. Bullard* (1984), 144 Vt. 627, 481 A.2d 1049; *State ex rel. Greebel v. Endsley* (1978), 269 Ind. 174, 379 N.E.2d 440; *Pinner v. Pinner* (1977), 33 N.C.App. 204, 234 S.E.2d 633. We find that the *Storey* court correctly interpreted the statute. However, we do not agree with the court's position on personal jurisdiction. The *Storey* court held that because the defendant had an obligation to pay child support and because he fulfilled these duties, there existed sufficient minimum contacts to exercise personal jurisdiction over him. Although we disagree with that rationale, it does appear that the court in *Storey* could have exercised long-arm jurisdiction over the defendant pursuant to Civ.R. 4.3(A)(8) because the parties therein were married in Ohio and had lived in Ohio for three years prior to moving to another state. Accordingly, we find that, had the trial court herein been able to obtain personal jurisdiction over appellant, the court could have modified the support order, because it was properly registered. Therefore, in light of this finding, we overrule the third assignment of error.

Having found error prejudicial to appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court as to its assumption of personal jurisdiction over appellant, modification of the support order, and judgment of arrearage. We remand the case to the trial court for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

THOMAS F. BRYANT and SHAW, JJ., concur.