McCLURE, Appellee,

v.

McCLURE, Appellant.

[Cite as *McClure v. McClure* (1997), 119 Ohio App.3d 76.]

Court of Appeals of Ohio,
Fourth District, Highland County.

No. 96CA901.

Decided April 7, 1997.

*Hapner & Hapner* and *Jon C. Hapner*, appellant.

*Rodrick J. Hamilton*, for appellee.

HARSHA, Judge.

Faith McClure appeals a judgment of the Highland County Court of Common Pleas, which approved the recommendation of the referee ordering her to pay $69 plus poundage every two weeks as support for her minor child, Stephen McClure.

This proceeding was initiated by the state of West Virginia in the name of Sidney McClure, Stephen's father and Faith's former husband, pursuant to the Uniform Reciprocal Enforcement of Support Act ("URESA") as codified in R.C. Chapter 3115. The petition sought prospective child support and medical coverage, as well as reimbursement for public assistance provided for Stephen's benefit.

Sidney and Faith McClure were married on March 2, 1973. The couple had two children, Kawana and Stephen. On September 15, 1983, the Circuit Court of Greenbrier County, West Virginia, granted the husband's complaint for divorce.

The court awarded custody of both children to the husband and made the following order regarding child support:

"It is further ordered that the defendant shall not be required to pay child support at this time due to the fact that the plaintiff is able to provide their support and the defendant is financially unable to do so at the present time."

The record does not reflect that this order has ever been modified by the Greenbrier County Circuit Court so as to impose a specific child support obligation upon Ms. McClure.

On November 9, 1992, a Child Support Enforcement Transmittal form was filed in the Highland County Court of Common Pleas by the Child Advocate Office ("initiating agency") located in Lewisburg, West Virginia. Attached to this form were copies of West Virginia's enactment of the URESA, a certificate and order form, a uniform support petition and an income and expense affidavit.

Under the "Action Requested" portion of the transmittal form, the initiating agency checked the box asking for the establishment of a URESA order. Another possible action, registration of foreign support order, was not marked. Similarly, the uniform support petition stated that Mr. McClure was petitioning for the establishment of a URESA order, not the registration of a foreign support order.

Ms. McClure was personally served with these various documents on January 3, 1993. Shortly thereafter, she filed a motion to dismiss this action due to the absence of a specific child support order from the Greenbrier County Circuit Court. Since the record does not reflect any disposition of this motion, we must presume that it was overruled by the trial court.

The matter was subsequently heard by a referee, and his findings were filed on May 5, 1993. The evidence at this hearing revealed that Ms. McClure was currently working thirty hours a week as a nursing assistant. Her hourly wage was $5.30. Based on this information, the referee determined that Ms. McClure's child support obligation should be $69 plus poundage every two weeks. Since her part-time employment did not entitle her to benefits, the referee did not order her to provide health insurance for Stephen. Finally, the referee did not order her to make reimbursement for the public assistance Stephen received from the state of West Virginia, since she was not employed during the time period in which that assistance was provided.

Ms. McClure timely filed objections to the referee's report on May 17, 1993. One objection stated that since there was no prior child support order, the trial court did not have the authority to impose a support order upon her. On that same day, the court reporter was requested to prepare a transcript of the hearing before the referee. The transcript was then filed on May 26, 1993.

Inexplicably, the next document in this record was not filed until March 19, 1996. That document was a child support worksheet signed by Faith McClure. Despite the three-year gap since the hearing in this matter, the worksheet indicated that Ms. McClure's annual gross income from employment was $8,268 ($5.30/hour × 30 hours/week × 52 weeks). Moreover, the worksheet was not notarized, did not contain any financial information regarding Mr. McClure, and was not signed by him.

Also on March 19, 1996, the trial court filed an entry overruling Ms. McClure's objections to the referee's report and thereby adopted his recommendation to establish a child support order in the amount of $69 plus poundage every two weeks.

Appellant assigns the following two errors for our review:

I. "The trial court erred in requiring the defendant/mother/appellee to pay support when the original decree specifically held that she had no responsibility to pay support and no evidence has been adduced at the hearing or otherwise as to the change of condition of the custodial parent."

II. "The trial court erred in adopting the statutory schedule since: (1) there was no evidence of the father's income being offered or considered, (2) the statutory scheme requires compliance with the information to complete the schedule, and a 'work-sheet' is not complete if the father's earnings are not taken into account."

Appellant's first assignment of error argues that the trial court lacked subject-matter jurisdiction to establish a child support obligation that is greater than the amount currently ordered by the parties' divorce court. The trial court's entry of a support order in this case implies that the court believed it possessed subject-matter jurisdiction. This court will review that legal determination *de novo* without any deference to the conclusion of the trial court. *Burns v. Daily* (1996), 114 Ohio App.3d 693, 683 N.E.2d 1164. In order to conclude that the trial court possessed authority to enter this particular judgment, we must determine whether appellee satisfied his burden of stating a cause of action that could have been heard by the common pleas court.

The Uniform Reciprocal Enforcement of Support Act essentially provides two separate remedies for enforcing foreign support orders. Baldwin's Ohio Domestic Relations Law (1992) 550, Section 23.02 and 560, Section 23.03. Generally, these two remedies differ in the characterization of the support order itself. In the more "traditional method," a responding state merely enforces a support order previously established by a court of the initiating state. Baldwin's, *supra*, at 461, Section 19.19(C). In the other method, a responding state actually adopts an initiating state's support order as its own judgment by virtue of formal

registration in the responding state. Baldwin's, *supra,* at 464, Section 19.19(D). This distinction is important because of the potential authority granted to the responding court to modify the initiating court's order.

■ Under the traditional method, R.C. 3115.27 deprives Ohio courts of subject-matter jurisdiction to increase the amount of the support obligation set forth in the initiating court's order.[1] *San Diego v. Elavsky* (1979), 58 Ohio St.2d 81, 12 O.O.3d 88, 388 N.E.2d 1229, paragraph one of the syllabus; *Logan v. Vice* (1992), 79 Ohio App.3d 838, 844, 608 N.E.2d 786, 790; *Jacobs v. Jacobs* (1988), 62 Ohio App.3d 271, 276–277, 575 N.E.2d 480, 483; *State ex rel. Marsh v. Jarocki* (Sept. 30, 1993), Trumbull App. No. 93–T–4832, unreported, 1993 WL 407303; *Colston v. Colston* (Aug. 24, 1990), Ross App. No. 1649, unreported, 1990 WL 127045; *Briggs v. Briggs* (Mar. 2, 1987), Clermont App. No. 86–09–064, unreported, 1987 WL 7177; *Nazer v. Klingaman* (Dec. 30, 1982), Ottawa App. No. OT–82–23, unreported, 1982 WL 6701. See, also, Baldwin's, *supra,* at 463. Moreover, at least one Ohio court has held that where the original domestic relations judgment imposed *no* child support obligation at all, an order of support could not be entered for the first time by the Ohio trial court in a URESA action. See *Gabel v. Bertonaschi* (Dec. 31, 1985), Lucas App. No. L–85–199, unreported, 1985 WL 4808.[2]

On the other hand, several courts have interpreted R.C. 3115.32(G) as authorizing Ohio courts to increase the support obligation set forth in the initiating court's order, provided the required changed circumstances are established, since it has been transformed into an Ohio support order.[3] See *Hudgins v. Hudgins* (1992), 80 Ohio App.3d 707, 719–720, 610 N.E.2d 582; *Berry v. Berry* (July 28, 1993), Montgomery App. No. 13746, unreported, 1993 WL 295096; *Storey v.*

---

1. This statute provides, in part, "If the other action or proceeding is concluded before the hearing in the instant proceeding and the judgment therein provides for the support demanded in the complaint being heard, *the court must conform its support order to the amount allowed in the other action or proceeding.*" (Emphasis added.)

2. See, also, *Linville v. Marshall* (Mar. 1, 1995), Hamilton App. No. C–940129, unreported, which held that, in the absence of an explicit provision in a Kentucky divorce decree addressing the noncustodial parent's obligation to provide child support, the Ohio court had the authority to order that parent to provide support under URESA. In light of the clear and unambiguous provision in the West Virginia divorce decree, we note this case as additional persuasive authority in support of our decision.

3. This section provides, "Upon registration the registered foreign support order shall be treated in the same manner as a support order issued by a court of this state. It has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this state and may be enforced and satisfied in like manner."

*Storey* (Aug. 17, 1990), Greene App. No. 89–CA–95, unreported, 1990 WL 119262. See, also, Baldwin's, *supra,* at 464.

■ The documents filed by the Child Advocate Office in this case do not expressly request the "registration" of that support order. Rather, both the child support enforcement transmittal form and the Uniform Support Petition merely requested the establishment of a URESA order by the Ohio court. Although both documents included a box to specifically request the registration of a foreign support order, it was left blank on both forms. Thus, in light of appellee's failure to proceed in this matter as a registration pursuant to R.C. 3115.32, the trial court was deprived of any authority to modify the previous order of the Greenbrier County Circuit Court.

In conclusion, we note that our decision in this case is not intended to immunize Faith McClure from the duty to support her minor child. Our decision only requires Sidney McClure to either (1) file a postdecree motion with the Greenbrier County Circuit Court requesting modification of its prior child support order, see Baldwin's, *supra,* at 557, or (2) refile the documents below and expressly request the Highland County Court of Common Pleas to register the circuit court's order as its own.[4]

Accordingly, appellant's first assignment of error is sustained,[5] and the judgment of the Highland County Court of Common Pleas is hereby reversed.

*Judgment reversed.*

STEPHENSON, P.J., and PETER B. ABELE, J., concur.

■

---

4. If this latter course is chosen, though, we urge the trial court to thoroughly prepare a child support worksheet and include it in the record. We likewise urge the parties to provide the court with the necessary information in a timely fashion in order to make the necessary calculations.

5. Based on this disposition, appellant's second assignment of error is moot. App.R. 12(A)(1)(c).