OPINION
This timely appeal arises from the trial court's judgment entry adopting a magistrate's decision distributing a portion of Appellant's military pension to Appellee. For the following reasons, we affirm the judgment of the trial court.
Appellant Gary Raymond McCullough and Appellee Grace Randolph, f.k.a. Grace McCullough, were married in Youngstown, Ohio, on August 26, 1972. During the entire marriage, Appellant served in the United States Navy. On December 16, 1986, Appellee filed a complaint for divorce in the Mahoning County Domestic Relations Court. A final divorce hearing was held on November 18, 1987, and the court designated this as the date of divorce. On February 12, 1988, the trial court adopted an agreed judgment entry as part of the final divorce decree. Article 7(E) of the agreed judgment entry provided that:
 "[Appellee] shall fully retain her right as spouse or surviving spouse to any and all pension and/or death benefits of Husband, which were accumulated prior to the parties' final divorce, for years of marriage ended on the date of the final decree of the divorce. Such pension and/or death benefits shall be paid to [Appellee] upon the earlier of [Appellant's] death or the commencement of [Appellant's] pension benefits. This allocation shall be considered a Qualified Domestic Relations Order (QDRO) for all legal or equitable purposes."
On March 18, 1988, the trial court adopted an amended judgment entry which incorporated a stipulated Qualified Domestic Relations Order (QDRO) which designated Appellee as the "Alternate Payee" of Appellant's military pension benefits payable upon Appellant's eligibility for benefits under the plan. Paragraph 6 of the stipulated QDRO provided that:
 "The benefits will be paid from the Plan to the Alternate Payee in the amount of fifty percent (50%) of the amount due the Participant from all credited service from the inception of said employment and participation under the Plan by the Participant, until the 18th day of November, 1987, the date the parties were divorced. The Alternate Payee shall not participate in any credited service after the 18th day of November, 1987, again, the date the parties were divorced."
Attached to the stipulated QDRO was an appendix setting forth the calculation to be used to determine Appellee's distributive share of the pension. By those calculations, Appellee was to receive three-eighths (3/8) of Appellant's monthly paid benefits. That fraction was determined by dividing the years of marriage (15) by the number of years of service required for Appellant's pension rights to vest (20), multiplied by one-half (15/20 ' 3/4 x 1/2 ' 3/8).
Appellant retired from the Navy on January 31, 1998, and on June 15, 1998, Appellee filed a post decree motion for a supplemental clarifying order which sought to initiate pension payments. Appellee asked the court to award her half of Appellant's pension benefits accrued during the years of marriage. Appellee proposed that the proper formula was the years of marriage divided by Appellant's total years of service, multiplied by one-half. Following a hearing on the matter, on July 16, 1998 a magistrate filed findings of fact and conclusions of law. The magistrate found that counsel for both parties agreed that an expert should be employed to determine the exact amount to be paid to Appellee. The magistrate ordered that the parties would share the cost for this evaluation, which would determine Appellee's interest in the pension. Neither party objected to the magistrate's order.
Following the completion of the pension evaluation, a second magistrate's hearing was held on September 29, 1998. The magistrate filed findings of fact and conclusions of law on October 19, 1998 and then filed amended and corrected findings of fact and conclusions of law on October 21, 1998. The magistrate found that pursuant to the expert evaluation, the parties agreed that 60.8426% of the pension was earned during the marriage. However, the magistrate also found ambiguity in paragraph six of the QDRO which provided that Appellee, "* * * shall not participate in any credited service * * *" after the date of divorce. The magistrate noted Appellant's interpretation that the language should act to limit Appellee's share to a fraction of the value of the pension at the time of the divorce, rather than a fraction of the value of the pension at maturity. At paragraph 6 of his October 21, 1998, decision, the magistrate wrote that the ambiguous language:
 "* * * does not expressly state that [Appellee] shall enjoy benefit from the growth in value of the pension due to inflation or investment, but rather only says she shall not participate in any `credited service' after the date of the divorce. The Court finds this term to be ambiguous and without clear meaning. Since the court finds the same to be ambiguous, the Court must interpret the same equitably. For the reasons set forth above, the Court finds it to be most equitable not to deprive [Appellee] of the normal growth in her share of the pension."
The magistrate then ordered that Appellee be paid 30.42% of Appellant's monthly pension benefits, one-half of the percentage of the pension attributable to the marriage.
On November 2, 1998, Appellant filed objections to the magistrate's decision arguing, among other things, that the language of the QDRO was not ambiguous and that in the absence of an express reservation to do so, the trial court lacked jurisdiction to modify the terms of distribution. The trial court heard arguments regarding Appellant's objections on December 9, 1998. On January 19, 1999, the trial court filed a judgment entry remanding the matter back to the magistrate with instructions to inquire further into the intent of the parties regarding the distribution of the pension.
A magistrate's hearing was held on February 23, 1999, and findings of facts and conclusions of law were filed on March 15, 1999. The magistrate found that based on her testimony, it was always Appellee's intent and understanding that she would receive a coverture share of the appreciated value of the pension. The magistrate further found that a "frozen coverture" valuation suggested by Appellant was not mandated by the divorce decree or the QDRO. Such calculation, according to Appellant, would result in no benefit to Appellee as it is based on a fractional share of the pension value on the date of divorce. As military pensions are non-contributory and entitlement is based on years of service only, the pension essentially had no value on the date of divorce or prior to completion by Appellant of the required twenty years of service. The magistrate reaffirmed the marital portion of the pension at 60.8426% and reaffirmed Appellee's entitlement to 30.42% of Appellant's monthly pension benefits.
On March 29, 1999, Appellant filed objections to the magistrate's order of March 15, 1999. Appellant objected only to the trial court's jurisdiction to modify the method of calculating Appellee's share of the pension for lack of a specific reservation to do so in the original QDRO or divorce decree. Appellant did not challenge the manner in which the magistrate calculated Appellee's share.
 On May 4, 1999, the trial court heard arguments on Appellant's objection. The court overruled the objection by judgment entry filed on May 21, 1999. The trial court admitted that it had no jurisdiction to modify a separation agreement pursuant to statute, but noted that it did have jurisdiction to interpret and clarify ambiguous language by examining the intent of the parties. The court found ambiguity created by three provisions in the record: Article 7(E)of the original agreed judgment entry filed on February 12, 1988; Paragraph 6 of the stipulated QDRO incorporated by the Amended Judgment entry filed on March 18, 1988; and the formula contained in the appendix to the stipulated QDRO. The court then found that based on Appellee's testimony, the magistrate correctly determined that Appellee should be awarded a coverture share of Appellant's monthly pension benefits calculated by dividing the number of years from Appellant's initial service in the Navy to the date of divorce (fifteen years) by Appellant's total number of years of service (twenty-seven) multiplied by fifty per cent.
On June 18, 1999, Appellant filed his notice of appeal of the judgment entry filed on May 21, 1999. Appellant's sole assignment of error states:
 "THE TRIAL COURT COMMITTED AN ERROR OF LAW, ACTED ARBITRARILY, AND ABUSED ITS DISCRETION BY DRASTICALLY MODIFYING ITS PREVIOUSLY ADOPTED DIVORCE DECREE AND STIPULATED QUALIFIED DOMESTIC RELATIONS ORDER, WHEN SAID ORDERS WERE NOT AMBIGUOUS AND DID NOT EXPRESSLY PROVIDE FOR THE TRIAL COURT'S RESERVATION OF JURISDICTION TO SO MODIFY."
Appellant acknowledges that pension benefits accrued during the marriage are subject to property division in a divorce proceeding. Erb v. Erb (1996), 75 Ohio St.3d 18, 20. However, Appellant states that a trial court lacks continuing jurisdiction to modify a division of marital property in the absence of an express reservation in the divorce decree to do so. Schrader v. Schrader (1995), 108 Ohio App.3d 25, 28;Doolin v. Doolin (Sept. 30, 1997) Lucas App. No. L-96-311, unreported.
Appellant contends that the divorce decree in the present case does not contain language sufficient to reserve the trial court's jurisdiction over the division of Appellant's military pension.
In the present case, the stipulated QDRO stated at paragraph 13 that, "This Court shall retain jurisdiction to amend this Order only for purposes of establishing and maintaining its qualifications as a Qualified Domestic Relations Order under the Retirement Equity Act of 1984 * * *." Appellant asserts that this language is inadequate to retain jurisdiction by the trial court to modify the distribution of his pension. For support Appellant relies on Schrader v. Schrader, supra, where the court of appeals found that the trial court did not retain jurisdiction to modify a pension distribution by including language that it retained, "* * * limited jurisdiction to amend [the] order only for purpose of meeting any requirements to create, conform, and maintain [the] order as a qualified domestic relations order pursuant to the Retirement Equity Act of 1984." Id. Appellant asserts that the reservation language in this case is analogous to that inSchrader and, therefore, the trial court did not effectively retain jurisdiction to modify the QDRO.
Appellant also contends that there was no ambiguity in the QDRO. Appellant cites the July 16, 1998, magistrate's decision which found that the parties agreed that, "* * * a careful reading of the Q.D.R.O. makes clear that, `The Alternate Payee shall not participate in any credited service after * * *' the date of divorce." Based on the record herein, Appellant's contention is groundless and this assignment of error is without merit.
Appellant essentially challenges the jurisdiction of the trial court to award Appellee a share in Appellant's pension pursuant to the magistrate's decision filed March 15, 1999, and adopted by the trial court on May 21, 1999. A question of jurisdiction is reviewed de novo, with no deference given to the trial court. Swayne v. Newman (1998), 131 Ohio App.3d 793, 795;McClure v. McClure (1997), 119 Ohio App.3d 76, 79.
It is undisputed that pension benefits accrued during a marriage are marital assets subject to property division in a divorce proceeding. Erb. v. Erb (1996), supra, 20. Various methods are available to divide pension benefits upon a divorce, the four most common being:
 "(1) withdrawing the entire employee's share from the fund; (2) offsetting the present value of the nonemployee spouse's equitable share with other marital property; (3) offsetting the present value of the nonemployee's equitable share with installment payments; or (4) ordering that a percentage of the future benefit be paid, directly from the fund to the nonemployee spouse, if and when the pension matures."
 Patsey v. Patsey (Dec. 16, 1998), Columbiana App. No. 96 CO 52, unreported, *2, quoting Smith v. Smith (1993), 91 Ohio App.3d 248,253.
Under the circumstances of the present case, the fourth option, ordering a proportional payment to the non-contributing spouse upon maturity, is not only permissible but is appropriate. In response to the United States Supreme Court's decision inMcCarty v McCarty (1981), 453 U.S. 210, that state courts could not treat military retirement benefits as marital property, the United State's Congress passed the Former Spouses Protection Act.Mansell v. Mansell (1989) 490 U.S. 581, 584. The Act authorizes state courts to treat retirement benefits as marital property.Id., 584-585, citing 10 U.S.C. § 1408(c)(1).
 "The Act also creates a payments mechanism under which the Federal Government will make direct payments to a former spouse who presents, to the Secretary of the relevant military service, a state-court order granting her a portion of the military retiree's disposable retired or retainer pay. This direct payments mechanism is limited in two ways. § 1408(d). First, only a former spouse who was married to a military member `for a period of 10 years or more during which the member performed at least 10 years of service creditable in determining the member's eligibility for retired or retainer pay,' § 1408(d)(2), is eligible to receive direct [marital] property payments. Second, the Federal Government will not make community property payments that exceed 50 percent of disposable retired or retainer pay. § 1408(e)(1)."
 Mansell v. Mansell, 585.
In the present case, the stipulated QDRO clearly provided an appropriate means to distribute a share of the marital portion of the pension to Appellee under the circumstances.
It is also well settled that a court lacks jurisdiction to modify the terms of a property division set forth in a divorce decree. According to R.C. § 3105.171(I), a property division, "* * * is not subject to future modification by the court." "This section of the code reflects the policy that finality is preferred when dealing with the division of marital property." Jakubek v.Jakubek (Sept. 18, 1998), Mahoning App. No. 96 CA 130, unreported, * * 4. However, a trial court may maintain jurisdiction to later modify a property division by providing for such authority in the original decree. Id. quoting In re Whitman (1998), 81 Ohio St.3d 239. However, given the record before us, we need not determine whether the original decree contained sufficient language to retain jurisdiction to modify the pension division because no such modification occurred. Even in the absence of jurisdiction to modify a property distribution, a trial court retains "full power" to enforce the provisions incorporated into a divorce decree.Cherry v. Figart (1993)86 Ohio App.3d 123, 126, citing In reDissolution of Marriage of Seders (1987), 42 Ohio App.3d 155,156-157. If there is good faith confusion over the meaning to be given a provision in a decree, or if the provision is ambiguous, the trial court has the power to hear the matter, resolve the dispute and enforce the decree. Quisenberry v. Quisenberry
(1993), 91 Ohio App.3d 341, 348 citing In Re Dissolution ofMarriage of Seders.
In the present case, it is clear that this post decree action was instituted to enforce and clarify the original pension division. The matter was initiated by Appellee's "Motion for Supplemental Clarifying Order" which sought implementation of pension payments to Appellee. It is not disputed by either party that the valuation of the pension for purposes of distributing Appellee's share was necessary and properly undertaken by the trial court.
With respect to the trial court's determination that provisions for pension distribution were ambiguous, such an interpretive decision will not be disturbed upon appeal absent a showing of an abuse of discretion. Bond v. Bond, (1990), 69 Ohio App.3d 225,227 citing In Re Dissolution of Marriage of Seders,supra, 156 and Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. Likewise, the trial court enjoys broad discretion in resolving those ambiguities and may inquire into the intent of the parties as well as the equities involved. In Re Dissolution of Marriageof Seders, 156; Weller v. Weller (1996) 115 Ohio App.3d 173, 179;Bond v. Bond, 228. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemorev. Blakemore, 219 quoting State v. Adams (1980), 62 Ohio St.2d 151,157.
As we stated earlier, in the judgment entry at issue here the trial court found ambiguity created by three provisions in the divorce decree: Article 7(E) of the judgment entry filed February 12, 1988; the stipulated QDRO filed and incorporated into the decree on March 18, 1988; and the appendix to the stipulated QDRO which set forth a formula to be applied in order to determine Appellee's interest in the pension. A review of these provisions does demonstrate that they created an ambiguity in the manner in which the pension was to be divided.
Article 7(E) of the judgment entry filed February 12, 1988, provided that Appellee would receive half of the value of the pension accumulated, "* * * prior to the parties final divorce, for years of marriage ending on the date of the final decree of divorce." This provision provided further that, "[t]his allocation shall be considered a * * *(QDRO) for all legal or equitable purposes." When the trial court amended the February 12, 1988, judgment entry by order filed on March 18, 1988, it stated that the parties:
 "* * * have fully executed all aspects of their agreement by initialling all the changes made at or before [the date of divorce].
 "The balance of the previous Judgment Entry shall remain in effect except for the substitution made here for the parties' agreement.
 "Of note, the Child Support Obligor has paid the Child Support Obligee directly [for three months] so that the Child Support Order's commencement date from the previous Judgment Entry has been complied with for those three (3) months.
 "All other particulars of the previous Judgment Entry are herein reiterated * * *"
Article 7(E) of the incorporated prior judgment entry was not initialed as being changed and thus, was still in force. However, this article directly conflicts with the incorporation of the stipulated QDRO as the terms of each provision are not in accord. Specifically, Article 7(E) provides for consideration of the years of marriage only, while the stipulated QDRO provides for consideration of Appellant's years of service up to the date of divorce. Therefore, it is not only ambiguous as to which provision controls, but there is ambiguity as to what length of time should serve as a basis for determining Appellee's share in the pension.
Moreover, ambiguity is apparent when considering paragraph 6 of the stipulated QDRO and its appendix. Paragraph 6 states that Appellee is to receive fifty per cent of, "* * * the amount due
the Participant from all credited service from the inception of said employment * * *" to the date of divorce. (Emphasis added). The language here would operate to provide Appellee only with a share of the actual present value of the pension at the time of the divorce, which, as the record reflects, would be nothing. In contrast, "Exhibit A" provides that Appellee's, "* * * proportionate share is one-half of the value(s), if any, to beattributed to 15 years of service, ie [sic], 1/2 x 3/4 ' 3/8." (Emphasis added). This language operates to provide Appellant a fractional share of the pension as vested, based on the years of marriage in proportion to the years of service. The language, "to be attributed to" is in stark contrast to the language in paragraph 6, "the amount due the Participant." The latter clearly gives Appellee a share of the benefits accumulated during the marriage (none), while the former clearly gives Appellee a proportional share of Appellant's vested benefits attributable to a number of years of equal to the length of marriage.
Based on the forgoing, we cannot conclude that the trial court abused its discretion in finding ambiguity in the original divorce decree. The provisions for pension division were nebulous and thus, the trial court's clarification cannot be seen as unreasonable, arbitrary or unconscionable. The court was acting within its power to inquire into the intent of the parties as well as the equities involved in determining a proper distribution of the pension benefits. In Re Dissolution of Marriage of Seders,supra, 156; Weller v. Weller, supra, 179; Bond v. Bond, supra, 228.
There is a second reason Appellant's arguments must fail, here. In his objections to the magistrate's decision which are predicate to the judgment entry appealed, Appellant did not factually or legally challenge the manner in which, after hearing evidence on the intent of the parties, the magistrate divided the pension. Rather, Appellant limited his objections solely to a challenge of the trial court's "authority" to modify the divorce decree. Therefore, Appellant has waived any error with respect to the manner in which the trial court has divided the pension benefits. Civ.R. 53(E)(3)(b).
For all the foregoing reasons, Appellant's assignment of error is overruled and the judgment of the trial court is affirmed.
Donofrio, J., concurs.
Vukovich, J., concurs.