DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Robert Adkins, appeals from the decision of the Summit County Domestic Relations Court. This Court affirms.
 I. {¶ 2} Appellant and Appellee, Jane Adkins, were granted a divorce on September 7, 2004. The divorce decree incorporated the terms of the parties' Separation Agreement, entered into on December 5, 2003. Pursuant to the Separation Agreement, Appellant paid Appellee spousal support in the amount of $5250 per month, subject to the continuing jurisdiction of the Domestic Relations Court.
 {¶ 3} At the time of the parties' divorce, Appellant was employed as an engineering manager at the Ford Motor Company where he had worked for about fifteen years. Following the divorce, Appellee obtained employment as the director of assisted living at a retirement facility, while Appellant's position at the Cleveland Ford plant was eliminated and he was reassigned. Thereafter, Appellant was asked to accept early retirement. He declined. Appellant eventually agreed to retire by July 1, 2005 in exchange for Ford's Select Retirement Plan ("SRP"). The SRP included enhanced benefits for eligible employees who elected to retire. The SRP provided Appellant a monthly payment based on an additional three years' age and three years' service. The SRP also provided outplacement counseling, eligibility for health and dental care, and a voucher for purchase of a Ford automobile.
 {¶ 4} Appellant's income dropped substantially as a result of his retirement. In contrast, Appellee's new employment increased her income. Consequently, on June 28, 2005, Appellant filed a motion to modify his support obligation based on a change of circumstances. Appellant also moved for a modification of the terms of the Qualified Domestic Relations Order ("QDRO") for his retirement account with the Ford Motor Company and requested that the court clarify that Appellee did not have an interest in the SRP.
 {¶ 5} The Domestic Relations Court held hearings on these motions on October 25, 2005 and November 14, 2005. On April 18, 2006, the Domestic Relations Court issued its judgment, granting Appellant's motion for modification of support but overruling his motion for modification and clarification of the Ford QDRO. Accordingly, Appellant's support obligation was reduced to $10 per month. The trial court found that the SRP was merely an enhancement or supplement to the General Retirement Plan ("GRP") in which the parties share an equal interest.
 {¶ 6} Appellant timely filed his notice of appeal from the Domestic Relations Court's Order, raising three assignments of error for our review. We have combined two of Appellant's assigned errors to facilitate our review. II. ASSIGNMENT OF ERROR I "AS AN INTEREST IN THE SELECT RETIREMENT PLAN WAS NOT A MARITAL ASSET, THE TRIAL COURT ERRED BY ASSIGNING [APPELLEE] AN INTEREST IN IT[.]"
 ASSIGNMENT OF ERROR III "THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]"
 {¶ 7} In Appellant's first and third assignments of error, he contends that the trial court's decision was against the manifest weight of the evidence because an interest in the SRP was not a marital asset, and the trial court should not have assigned Appellee an interest therein. We disagree.
 {¶ 8} Pension and retirement benefits generally constitute marital assets subject to division as personal property. Hoyt v. Hoyt (1990),53 Ohio St.3d 177, 178. As a trial court's classification of property as either marital or separate is a factual finding, we review the finding to determine whether it is supported by some competent, credible evidence and therefore supported by the manifest weight of the evidence.Spinetti v. Spinetti (Mar. 14, 2001), 9th Dist. No. 20113, at *4, citingBarkley v. Barkley (1997), 119 Ohio App.3d 155, 159; Morris v.Andros, 158 Ohio App.3d 396, 2004-Ohio-4446, at ¶ 18. See, also,Keyser v. Keyser (Apr. 9, 2001), 12th Dist. No. CA2000-06-127, at *1. "This standard of review is highly deferential,] and even `some' evidence is sufficient to sustain the judgment and prevent a reversal."Barkley, 119 Ohio App.3d at 159. Accordingly, an appellate court is guided by a presumption that the findings of the trial court are correct, as the trial court is in the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the proffered testimony. Id., citing In re Jane Doe I (1991), 57 Ohio St.3d 135, 138. This Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily" in favor of the plaintiff. State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, State v. Otten, 33 Ohio App.3d 339, 340.
 {¶ 9} "The purpose of contract construction is to effectuate the intent of the parties." Prudential Ins. Co., v. Stoneburner (July 14, 1988), 2d Dist. No. 88-CA-18, at *5, citing Skivolocki v. East Ohio GasCo. (1974), 38 Ohio St.2d 244, paragraph one of the syllabus. The intent of the parties to a contract such as a separation agreement is presumed to exist within the language of the agreement. Prudential Ins. Co., at *5. A court will only examine extrinsic evidence where the language of the agreement is unclear or ambiguous. Id.
 {¶ 10} Appellant contends that Appellee is not entitled to any portion of the SRP for several reasons. First, he contends that the early retirement incentive should be classified as a "severance package" instead of an early retirement incentive. He claims that this retirement benefit is different from the GRP divided at divorce and that the benefit was acquired after the divorce to induce early retirement. Accordingly, he claims that Appellee should not receive any share of that money. We find ample evidence to refute this contention.
 {¶ 11} The plain language of the decree of divorce reflects that Appellee, as alternate payee, should receive her pro-rata share of any "other economic improvements made to Participant's benefit on or after the date of his retirement." Moreover, it provides that she should receive her pro-rata share of the "Participant's early retirement subsidy and/or supplements[.]" The parties' Separation Agreement provides as follows:
 "The Husband, as a participant in the Ford Motor Company General Retirement Plan, a Defined Benefit Plan, shall assign to Wife, as an alternate payee by way of a QDRO, 50% of his marital interest in the Plan. If permitted by the Defined Benefit Plan, the QDRO shall include:
 "* * *
 "b. Pro-rata share of any cost of living adjustment (COLA) or any other economic improvements made to Participant's benefit on or after the date of his retirement.
 "c. The Alternate Payee's share of the benefits to be actuarially adjusted to reflect the Alternate Payee's own life expectancy. If this is not permitted under the Plan, then a shared QDRO payment will be utilized with appropriate post-retirement protection based on the marital portion of his accrued benefit.
 "d. The Alternate Payee's right to a pro-rata share of the Participant's early retirement subsidy and/or supplements including a recalculation should the Participant subsequently retire early after the Alternate Payee commences his/her share of the benefits."
 {¶ 12} We find that Appellant's SRP constitutes an early retirement subsidy or supplement and that the three additional years of service were incorporated as an incentive to induce Appellant's early retirement. Appellant testified that he reviewed a copy of Ford's SRP before agreeing to early retirement. Appellant's testimony reflects that the SRP served as an early retirement subsidy or supplement, not as severance:
 "Q. Okay. What does the Select Retirement Plan provide to you as an employee asked to retire?
 "A. It provided an incentive to retire in the form of three years age and three years of service above what I would normally have if I retired at that given point in time."
 {¶ 13} "Severance pay" is defined as "an allowance [usually] based on length of service that is payable to an employee on termination of employment [.]" Merriam-Webster's Collegiate Dictionary (11 Ed. 2005) 1140. While we agree with the trial court's finding that Appellant's decision to retire was involuntary, we find that Appellant has failed to demonstrate that he was terminated. To the contrary, he testified that based on the health of the company and his personal health, it was an offer he could not refuse. For this additional reason, we find that the plan was an early retirement incentive, not severance pay.
 {¶ 14} Appellant testified that Appellee anticipated that he would be offered early retirement:
 "A. I sent her an e-mail informing her that I had elected to retire from Ford.
 "* * *
 "Q. Okay. And what did she tell you?
 "A. She said that [she] understood. Based on the market, that she knew that Ford Motor Company was not doing well financially, and she suspected that I would be offered an early retirement."
 {¶ 15} The parties' Separation Agreement clearly contemplates the scenario where Appellant agreed to early retirement in exchange for an enhancement to his retirement plans with Ford. The Separation Agreement broadly states that Appellee is entitled to a "[p]ro-rata share of any cost of living adjustment (COLA) or any other economic improvements made to Participant's benefit on or after the date of his retirement." (Emphasis added.) In addition, the Separation Agreement provides Appellee with a "pro-rata share of the Participant's early retirementsubsidy and/or supplements[.]" (Emphasis added.) The parties specifically provided that the share would be recalculated should the "Participant" subsequently retire early after the Alternate Payee commences his/her share of the benefits.
 {¶ 16} Appellee negotiated for spousal support of $5250 per month based on more than thirty years of marriage and Appellant's yearly salary of $163,000. As a result of Appellant's agreement to accept early retirement, Appellee received only 15 months of spousal support. Thereafter, the trial court reduced her spousal support to $10 per month. We find that the Separation Agreement reflects the parties' anticipation for the precise scenario that unfolded after the divorce was final. Consequently, the Separation Agreement provided for the domestic relations court's continuing jurisdiction over the division of spousal support and any retirement bonuses.
 {¶ 17} We find no abuse of discretion in the trial court's determination that the SRP is merely an enhancement or supplement to the GRP. This decision was supported by competent, credible evidence including the plain language of the parties' Separation Agreement. Accordingly, Appellant's first and third assignments of error are overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT LACKED SUBJECT MATTER JURISDICTION TO AWARD AN INTEREST IN THE SELECT RETIREMENT PLAN [.]"
 {¶ 18} In Appellant's second assignment of error, he contends that the trial court lacked subject matter jurisdiction to award an interest in the SRP. We disagree.
 {¶ 19} Jurisdictional challenges raise questions of law which require de novo review. Smith v. Smith, 9th Dist. No. 21204, 2003-Ohio-1478, at ¶ 10, citing McClure v. McClure (1997), 119 Ohio App.3d 76, 79. As Appellant challenges the trial court's jurisdiction to award an interest in the SRP, we review the court's jurisdiction de novo.
 {¶ 20} "A domestic relations court lacks jurisdiction to revisit the division of property in a divorce or dissolution unless its final judgment or decree contains an express reservation of continuing jurisdiction." Schrader v. Schrader (1995), 108 Ohio App.3d 25, 28, citing Bean v. Bean (1983), 14 Ohio App.3d 358, 361-362. Here we find that the trial court expressly retained continuing jurisdiction over the matter.
 {¶ 21} Here, the court expressly incorporated the Settlement Agreement into the final decree. Section 4(H) of the Settlement Agreement provides for the court's continuing jurisdiction over the matter and states in part:
 "The Court shall retain jurisdiction over Husband, Wife, and the Retirement Plans for purposes of entering Qualified Domestic Relations Orders dividing the aforementioned Retirement Plans as provided in this Agreement, to the extent required to maintain the original intent of the Parties as stipulated herein."
 {¶ 22} Appellant contends that the trial court lacked jurisdiction over this matter because the SRP was not listed among the "aforementioned Retirement Plans" identified in Section 4(H) of the Separation Agreement. The Separation Agreement was entered into well before Appellant accepted early retirement. In light of our finding that (1) the parties anticipated that Appellant might accept an early retirement incentive such as the SRP and (2) the SRP is a supplement to the GRP, which was included in the Separation Agreement, this matter falls squarely within the broad category of retirement plans over which the court expressly retained jurisdiction. Appellant's second assignment of error is overruled.
 III. {¶ 23} Appellant's assignments of error are overruled. The judgment of the Summit County Domestic Relations Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
CARLA MOORE
FOR THE COURT
WHITMORE, P. J. CARR, J. CONCUR